IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JENNIFER T. JULIAN, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. 4:21-cv-00718-O-BP |
| | § | |
| LOUIS DEJOY, | § | |
| | § | |
| **Defendant.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court are Defendant Louis DeJoy's Motion for Summary Judgment with Brief

and Appendices in Support (ECF Nos. 30-34, respectively), Plaintiff Jennifer T. Julian's Response

to the Motion with Brief and Appendices in Support (ECF Nos. 40-41, 46-47), and Defendant's

Reply and Amended Reply to the Motion (ECF No. 42, 51). After considering the pleadings and

applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge

Reed O'Connor **GRANT** Defendant's Motion for Summary Judgment and **DISMISS** Plaintiff's

claims **with prejudice**.

## I.    BACKGROUND

The United States Postal Service ("USPS") hired Jennifer T. Julian ("Julian") as a part-

time mail carrier at the Olney, Texas post office in 1999. ECF No. 32-1 at 3. Julian left that position

in 2004 when she became Postmaster of a small, one-employee post office in Scotland, Texas

("Scotland Post Office" or "Scotland"). *Id.* at 6. Beginning in 2014, the USPS initiated a

reorganization and reduction in force ("RIF") plan. *Id.* at 7-8. The USPS converted small post

offices, including Scotland, to Remotely Managed Post Offices ("RMPOs") that reported to

Administrative Post Offices. *Id.* at 8. RMPO Postmasters became Non-Traditional Full-Time

("NTFT") clerks. *Id*. at 9-10. These positions were non-management, bargaining unit positions designed to reduce costs and improve efficiencies. *Id*.

On October 15, 2014, Julian received a letter regarding the RIF and learned of her options for continued employment. *Id*. at 9. She elected to downgrade from Postmaster to NTFT clerk to stay in Scotland. *Id*. at 9-10. As a result, on February 7, 2015, Julian gave up her management position and became an hourly employee. ECF Nos. 32-1 at 9–10; 34-5 at 35, 40.

In February, Julian also voluntarily accepted a temporary, six-month supervisory position in Stephenville, Texas ("the detail"). *Id*. at 10. The detail lasted from February 25 to August 25, 2017. *Id*. In April 2017, Sid W. Winn ("Winn") became Manager of Post Office Operations ("MPOO") of her area. ECF No. 32-2 at 5. Winn made a business decision not to renew Julian's detail, and in September 2017, Julian left Stephenville and resumed her work as NTFT clerk in Scotland. *Id*. at 6-7, 45. There, she reported to Lea Farney ("Farney"), then-Postmaster of the Henrietta, Texas post office, not the MPOO as she previously had done. *Id*. at 10.

After returning to Scotland, Julian had a series of disputes and problems with Winn and Farney. *See generally* ECF Nos. 22, 41. Thereafter, Julian filed an equal employment opportunity ("EEO") complaint with USPS alleging age discrimination, disability discrimination, failure to accommodate, retaliation, and a hostile workplace. ECF Nos. 34-1 at 5, 24, 34-2. Julian received her right to sue letter on March 2, 2021. ECF No. 33-1 at 101. She now brings suit on those claims under the Age Discrimination in Employment Act ("ADEA") and the Rehabilitation Act ("RA").

## II.    LEGAL STANDARD

### A.    Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56; *Slaughter v. S. Talc. Co.*, 949 F.2d 167, 170 (5th Cir. 1991). Disputes concerning material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue is 'material' if it involves a fact that might affect the outcome of the suit under the governing law." *Burgos v. Sw. Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986)).

When a movant carries its initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment would be improper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). Although the nonmovant may satisfy this burden by tendering depositions, affidavits, and other competent evidence, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Merely colorable evidence or evidence not significantly probative will not defeat a properly supported motion. *Anderson*, 477 U.S. at 249-50. Furthermore, a mere scintilla of evidence will not defeat a motion for summary judgment. *Id.* at 252; *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

The Court must view summary judgment evidence in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). In addition, factual controversies are resolved in favor of the nonmovant, but only when both parties have submitted evidence of contradictory facts, thus creating an actual controversy. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.

1994) (en banc). In the absence of any proof, however, the Court does not assume that the nonmovant could or would prove the necessary facts. *Id.*

In making its determination on the motion, the Court looks at the full record including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. Fed. R. Civ. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). However, the Court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 242-43. The Court grants movant's motion only if the movant meets its burden and the nonmovant fails to make the requisite showing of a genuine issue of material fact. Fed. R. Civ. P. 56; *Duckett*, 950 F.2d at 276.

### B.    Proper Party Defendant

Title "42 U.S.C. § 2000e-16(a)-(c) . . . provides the exclusive remedy for the employment discrimination claims of federal employees." *Lamb v. United States Postal Service*, 852 F.2d 845, 846 (5th Cir. 1988). The proper defendant in a federal employee's ADEA or RA action is the "head of the department, agency, or unit, as appropriate." 42 U.S.C. § 2000e-16(c); *Honeycutt v. Long*, 861 F.2d 1346, 1349 (5th Cir. 1988). As the head of the USPS, Postmaster Louis DeJoy ("DeJoy") in his official capacity is the only proper defendant here. *Id.*; *Lamb*, 852 F.2d at 846-47.

## III.   ANALYSIS

### A.    Julian has not raised a genuine issue of material fact regarding her age discrimination claim.

Julian alleges that Farney and Winn discriminated against her because of her age by improperly denying her out-of-schedule overtime pay ("OOS") and removing her from the detail. ECF Nos. 22 at 6, 31 at 30, 41 at 13-14. Under the ADEA, an employer may not "discharge . . . or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] age." 29 U.S.C. § 623(a)(1) (2023).

4

When the plaintiff contends that circumstantial evidence establishes her claim of age discrimination, as Julian does here, the Court will apply "the familiar framework outlined in *McDonnell Douglas Corp. v. Green* for allocating the burden of production and the order of presenting proof." *Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir. 2003) (holding that the *McDonnell Douglas* framework applies to ADEA claims).

Under the *McDonnell Douglas* framework, Julian must first create a presumption of discrimination by making a prima facie case of age discrimination. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). To establish a prima facie case, Julian must show that "(1) [she was] within the protected class; (2) [she was] qualified for the position; (3) [she] suffered an adverse employment decision; and (4) [was] replaced by someone younger or treated less favorably than similarly situated younger employees." *Smith*, 351 F.3d at 196. Under the ADEA, persons at least forty years of age are in the protected class. 29 U.S.C.A. § 631.

If the plaintiff makes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Smith*, 351 F.3d at 196. If the defendant meets this burden of production, the inference of discrimination drops, and the plaintiff must present evidence that the defendant's stated reason is pretextual. *Id*.

### 1.    Julian has not established a prima facie case of age discrimination.

The parties agree that Julian is over forty and that she was qualified for her job. *See generally* ECF Nos. 31 at 29-31, 41. The parties disagree whether Julian suffered an adverse employment action or was treated less favorably than similarly situated younger employees.

### a.    Julian did not show an adverse employment action.

"Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *Welsh v. Fort Bend Indep. Sch. Dist.*,

941 F.3d 818, 824 (5th Cir. 2019). An employment action that "does not affect job duties, compensation, or benefits" does not qualify. *Id.* (quoting *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004)). Additionally, a "mere 'loss of some job responsibilities' does not constitute an adverse employment action," but in certain cases, "a change in or loss of job responsibilities . . . may be so significant and material that it rises to the level of an adverse employment action." *Thompson v. City of Waco, Tx.*, 764 F.3d 500, 504 (5th Cir. 2014) (quoting *Williams v. U.S. Dep't of Navy*, 149 F. App'x 264, 269-70 (5th Cir. 2005)).

The loss of a temporary reassignment does not constitute an adverse employment action. *Anthony v. Potter*, No. CIV.A. 09-1009, 2011 WL 2531258, at *4 (M.D. La. June 24, 2011). Julian's detail is no different. A detail is a "development opportunity for employees to showcase their skills, to learn a management responsibility, [ ] various aspects of postal operations, including delivery and retail." ECF No. 34-6 at 7. Individuals frequently cycle in and out of details so that other individuals can develop these skills. *See* ECF No. 34-6 at 15-17. Julian admits that her detail was a "temporary detail position." ECF No. 34-5 at 48. Although Julian's duties changed while she was on the detail, she did not "lose" any duties on a permanent basis. *Anthony*, 2011 WL 2531258 at *4. Accordingly, Julian did not experience an adverse employment action when Winn decided not to renew her detail.

Julian also contends that USPS did not pay her overtime. ECF No. 41 at 14. However, it is unclear from her Amended Complaint and response to DeJoy's Motion whether she claims that she was entitled to overtime because she was required to clean her office and do yard work, but was not compensated for such work, or because of an error in the OOS system. ECF No. 41 at 13-14. Julian does not prevail under either possibility.

There is no authority in the Fifth Circuit establishing definitely whether a denial of overtime constitutes an adverse employment action. *See Brooks v. Firestone Polymers, L.L.C.*, 640 F. App'x 393, 397 (5th Cir. 2016); *Badii v. Rick's Cabaret Int'l, Inc.*, No. 3:12-CV-4541-B, 2014 WL 550593, at *7 (N.D. Tex. Feb. 11, 2014) (citing *Johnson v. Manpower Professional Services, Inc.*, 442 F. App'x 977, 982 (5th Cir. 2011)). In her Amended Complaint, Julian asserts that a clerk's job description did not include custodial duties, but that she was instructed to perform them in violation of her known medical limitations. ECF No. 22 at 5. Nowhere did Julian offer evidence that she was not paid for performing these custodial duties as a result of age discrimination. *Id.* Moreover, the Court cannot consider this claim since Julian raised it for the first time in response to the Motion. *Criner v. Texas-New Mexico Power Co.*, 470 F. App'x 364, 371 (5th Cir. 2012); *see Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court").

Julian's claim also fails to the extent that she did not receive payment for overtime due to an OOS system error. ECF No. 41 at 13-14. In July 2018, Farney learned that because of an error in the USPS computer system, Julian received OOS payments for times that she was not working. ECF Nos. 31 at 13-14, 32-1 at 11-12. Farney and USPS's finance and labor departments investigated the error and determined that Julian was not entitled to more than the $3,000 of OOS pay that she already had received. *Id.* at 11-14. USPS tried, but ultimately failed, to fix the computer glitch until June 2020 *Id.* at 13. From 2018 when USPS discovered the mistake until 2020, it refused to pay Julian overtime for hours outside her set schedule. *Id.* However, Julian claims that she was erroneously denied OOS pay between August 2018 and February 2019, when she filed the EEO complaint. ECF Nos. 22 at 3; 41 at 4.

Denial of payment for overtime may constitute an adverse employment action. *See Johnson v. Manpower Pro. Servs.*, *Inc.*, 442 F. App'x 977, 979 (5th Cir. 2011) (holding that changing an employee from an "overtime employee" to an "overtime exempt employee" was an adverse employment action because it related to the plaintiff's compensation); *Tanzy v. Mayorkas*, No. 3:20-CV-3161-X-BH, 2021 WL 3625076, at *5 (N.D. Tex. 2021), *rec. adopted*, 2021 WL 3618109 (N.D. Tex. 2021) (holding that repeated denials of overtime payment was an adverse employment action). However, both of these cases involved denial of overtime for work actually performed. *Id.* The summary judgment evidence showed that Julian did not work any overtime. ECF Nos. 32-2 at 20, 34-6 at 23. And there is no evidence that USPS denied compensation to her for hours that she did work. Accordingly, Julian has not shown an issue for trial on her claim that she experienced an adverse employment action in concerning the detail and overtime pay.

### b.   Julian has not shown that she was treated less favorably than similarly situated younger employees.

Even if Julian had established a fact issue regarding an adverse employment action, she failed to present evidence of disparate treatment. In her response to the Motion, she attached the affidavits of Sharon Drummond ("Drummond"), an older NTFT employee, and Cindy Minor ("Minor"), a younger NTFT employee. ECF No. 47 at 3, 6-7. Julian states that both she and Drummond were older employees under the supervision of Farney and Winn who had problems with receiving OOS pay because of the computer glitch. ECF Nos. 41 at 8, 47 at 2-3. Minor testified that she did not have any problems with the OOS system and overtime pay, and, thus, Julian contends that the problems she faced were a result of age discrimination. ECF No. 41 at 8.

To qualify as "similarly situated" for purposes of an employment discrimination claim, the comparable employees must have the same job or responsibilities, share the same supervisor or have their employment status determined by the same person, and have comparable violation

histories. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). Julian did not establish that Minor, a younger employee, was similarly situated. Minor was an NTFT clerk, but was based in Montague, Texas, not Scotland. ECF No. 47 at 6. While Winn was her second line supervisor, her immediate supervisor was an employee named Michelle Baynes. *Id.* at 7. Finally, Julian did not show that Minor experienced a computer glitch in the USPS system that incorrectly logged her hours. *See generally* ECF Nos 41, 47. Therefore, Julian has not provided summary judgment evidence of a similarly situated employee who was treated better than she was to establish a prima facie case of discrimination.

> **2.     Julian has not shown that the reasons for USPS's actions were a pretext for age discrimination**.

Even if Julian had established a prima facie case of discrimination, DeJoy has presented evidence to show that USPS had a legitimate, non-discriminatory reason to remove Julian from the detail and to deny her additional OOS pay. USPS's burden is only one of production, not persuasion, and involves no credibility assessment. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). DeJoy has met his burden. He produced evidence of numerous business reasons for removing Julian from the detail, including that she already had served for ninety days, that the detail was creating additional overtime for other offices, and that other employees also needed the opportunity to improve their skills on a detail. ECF No. 32-2 at 6-7, 45. Additionally, he offered evidence that Julian did not receive additional OOS pay because of a glitch in the USPS software that had not been repaired. ECF No. 32-1 at 11-14. Therefore, DeJoy met his burden of producing evidence of a legitimate, nondiscriminatory reason for the actions that affected Julian.

Because DeJoy produced a legitimate, non-discriminatory reason, the burden shifted back to Julian to show that the reasons were merely a pretext for age discrimination. Julian could raise an issue of pretext "either through evidence of disparate treatment or by showing that the

9

employer's proffered explanation is false or unworthy of credence." *Cal-W. Packaging Corp*., 602 F.3d at 378-79 (quoting *Laxton*, 333 F.3d at 578). To demonstrate pretext, Julian stated her personal belief that she was fired because of her age. ECF Nos. 34-5 at 68, 41 at 5. She also pointed to Winn's and Farney's frequent questions to her and Drummond asking when they were going to retire. *Id*.

For age-related comments to demonstrate pretext for age discrimination in ADEA cases based on indirect evidence, the plaintiff must show that the comments involve discriminatory animus on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker. *McMichael v. Transocean Offshore Deepwater Drilling*, *Inc*., 934 F.3d 447, 458 (5th Cir. 2019). Courts typically find a statement to be evidence of age discrimination in two situations. *Id*. First, the statement may reference age in a derogatory or stereotypical way. *Id*. (citing *Rachid v*. *Jack In The Box*, *Inc*., 376 F.3d 305, 315 (5th Cir. 2004) (finding evidence of age discrimination where the employer told the plaintiff ". . . you're too old")). Second, the statement may show a desire to replace older employees with younger ones. *Id*. (citing *Palasota v*. *Haggar Clothing Co*., 342 F.3d 569, 577-78 (5th Cir. 2003).

Neither situation is present here. Julian has not offered any evidence that comments about her eligibility to retire were made in a derogatory or stereotypical way or demonstrated a desire to replace her with a younger person. *Id*. Thus, Julian has not shown any discriminatory animus behind the comments. The Court also does not consider Winn's and Farney's comments to Drummond as proper summary judgment evidence. Drummond is seventy-four years old and nineteen years older than Julian. ECF Nos. 41 at 5, 47 at 2. Moreover, Winn's and Farney's comments were not directed toward Julian and were not made in connection with any termination

10

decision as Drummond was still employed by USPS as of February 2023. ECF Nos. 41 at 5, 47 at 3-4. Additionally, Winn and Farney asked Drummond about retirement only three time during her tenure at USPS, and this incidental questioning is not indirect evidence of age discrimination. ECF No. 47 at 2; *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 327 (6th Cir.), *cert. denied sub nom. Pelcha v. Watch Hill Bank*, 142 S. Ct. 461 (2021) (holding that infrequent comments directed towards another employee who was forty years older was not indirect evidence of age-related discrimination). However, even if Winn and Farney directed the retirement questions to Julian and Drummond, these questions alone do not evidence a discriminatory intent.

Other than evidence of Winn's and Farney's comments, Julian offers no evidence of age discrimination other than her subjective belief that she was discriminated against because she "cannot move as fast as a younger person to be able to perform all my duties within the time that I am dictated" ECF No. 34-2 at 108. However, Julian's subjective belief that she faced discrimination based on age is insufficient in the face of proof showing an adequate, nondiscriminatory reason for USPS's actions. *McCloud v. McDonough*, No. 22-10357, 2023 WL 2525656, at *3 (5th Cir. Mar. 15, 2023); *Elliott v. Grp. Med. & Surgical Serv.*, 714 F.2d 556, 564 (5th Cir. 1983); *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1164 (5th Cir. 1993). Therefore, because Julian offered no more than conclusory statements of age discrimination, she has not established that USPS's stated reason for terminating her detail or denying her OOS payments was a pretext for age discrimination.

**B.      Julian has not shown a genuine issue of material fact regarding her disability discrimination claim.**

Julian alleges that Farney and Winn discriminated against her because of a disability when they refused to allow her more than fifteen minutes to perform her closing duties. ECF No. 22 at 3. Because Julian has not produced direct evidence to make her case, the Court applies the

11

*McDonnell Douglas* burden shifting framework. *Rodriguez v. Eli Lilly & Co*., 820 F.3d 759, 765 (5th Cir. 2016). To establish a prima facie case of discrimination due to a disability, Julian must prove that: (1) she had a disability, (2) she was qualified for the job, and (3) there was a causal connection between an adverse employment action and her disability. *Id*. If Julian establishes the requirements, a presumption of discrimination arises, and the burden shifts to DeJoy to articulate a legitimate, non-discriminatory reason for the adverse action. *Kitchen v. BASF*, 952 F.3d 247, 252 (5th Cir. 2020) (citing *Caldwell v. KHOU-TV*, 850 F.3d 237, 241-42 (5th Cir. 2017)). If he does so, the burden then shifts back to Julian to show that his reason was pretextual, which she can do through evidence of disparate treatment or by showing that his explanation was false or unbelievable. *Id*.

### 1.    Julian has not established a prima facie case of discrimination.

Neither party disputes that Julian was qualified for her job. ECF No. 31 at 38. They do not agree that she had a disability. The Americans with Disabilities Act ("ADA") defines a "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102(2) (2023). The relevant time for assessing the existence of a disability is the time of the adverse employment action. *E.E.O.C. v. Chevron Phillips Chem. Co*., *LP*, 570 F.3d 608, 618 (5th Cir. 2009). Based on a diagnosis of bilateral foot strain in 2000, Julian received a modified job assignment, limiting her walking and standing to fifteen minutes an hour. ECF No. 47 at 13. Julian argues that the bilateral sprain is permanent, and, accordingly, she was disabled during her stint as an NTFT clerk in Scotland. ECF No. 41 at 6.

The ADA defines "major life activities" to include walking and standing. 42 U.S.C. § 12102(2)(A). However, Julian offers no evidence showing that her foot condition "substantially

limited" her ability to walk or stand during her time at Scotland. *See Lawson v. Excel Contractors*, L.L.C., No. 21-30438, 2022 WL 1793511, at *5 (5th Cir. June 2, 2022). To the contrary, two physicians, a primary care doctor and cardiologist who evaluated Julian in 2017, did not diagnose her with bilateral foot strain or recommend standing or walking limitations. Accordingly, Julian has not presented summary judgment to show that she was "disabled."

Even if she had, Julian did not offer summary judgment evidence of a causal connection between an adverse employment action and her disability. "[A]n adverse employment action consists of ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." *Pegram*, 361 F.3d at 282. Julian argues that she experienced an adverse employment action when Winn and Farney denied her more than fifteen minutes to complete her duties, but allowed Minor twenty-five minutes to close her office. ECF No. 41 at 11. Julian's argument is unavailing because imposing a higher or disproportionate workload on an employee compared to others is not an ultimate employment decision. *Benningfield v. City of Houston*, 157 F.3d 369, 376-77 (5th Cir.1998) (holding that being assigned an unusually heavy work load is not an adverse employment action); *Hart v. Life Care Ctr. of Plano*, 243 F. App'x 816, 818 (5th Cir. 2007) (plaintiff assigned more difficult tasks than Hispanic coworkers did not suffer an adverse employment action); *Wesley v. Yellow Transp., Inc.*, No. 3:05-cv-2266-D, 2008 WL 5220562, at *2 (N.D. Tex. Dec. 12, 2008) (plaintiff assigned a heavier workload than his Caucasian coworkers did not suffer an adverse employment action). Thus, USPS's alleged denial of extra time did not result in an adverse employment decision based on a disability, even if Julian had raised a fact issue regarding such a disability.

### 2.    Julian did not show that USPS's legitimate, non-discriminatory reasons were a pretext for discrimination.

Assuming that Julian established a prima facie case of disability discrimination, the burden shifts to DeJoy to present evidence of a legitimate, non-discriminatory reason to deny Julian extra time to close the office. *City of Shreveport*, 492 F.3d at 556. DeJoy met this burden through evidence that Farney relayed to Julian that she could take up to thirty minutes to close the office. ECF No. 33-1 at 60. Additionally, she told Julian that she could have additional time if she properly requested it. *Id*. Next, he offered the testimony of Phillip Harrison, the current Henrietta Postmaster, who explained the requirement of closing a post office at the end of the day and stated that a clerk at Scotland would not need to stay later than thirty minutes after the retail window closed. ECF No. 32-3 at 5-6. He also testified that these duties would not require walking or standing longer than fifteen minutes. *Id*. This evidence satisfied the burden of showing a legitimate, non-discriminatory reason for requiring Julian to close Scotland in around fifteen minutes.

Because DeJoy produced a legitimate, non-discriminatory reason, the burden shifted back to Julian to show that the reason was merely a pretext for disability discrimination. *Kitchen*, 952 F.3d at 252. Julian could show pretext through evidence of disparate treatment or by showing that the explanation was false or unbelievable. *Id*. However, Julian did not make that showing. Her response to the Motion states that Minor had more time to close her post office than she did, but Minor still closed the office within the thirty minutes that USPS stated Julian had if need be. ECF No. 47 at 7. Moreover, Julian has not pointed to any evidence to show that Harrison's testimony regarding how long it would take the close the Scotland office was false or pretextual.

Moreover, nothing in Julian's 100-page appendix demonstrates disparate treatment or falsity concerning Julian's claim that USPS supervisors denied her extra time to close the office. In her EEO complaint, Julian never alleged that she was treated differently than other employees

on the basis of her disability. ECF No 34-2 at 3. Moreover, she attached the affidavit of Drummond, who did not have the same disability as Julian, who also had to close her office in fifteen minutes. ECF No. 47 at 3. Finally, the record also reflects an email from Farney to William Kryzak, who worked in the Bluegrove post office, that stated that he had fifteen minutes to close the office. ECF No. 33-1 at 25. Accordingly, Julian has not offered evidence of pretext or disparate treatment that supports her claim of disability discrimination.

### C.    Julian has not raised a genuine issue of material fact regarding her failure-to-accommodate claim.

A failure-to-accommodate claim is distinct from a claim of disparate treatment, and courts analyze it separately. *Windhauser v. Bd. of Supervisors*, 360 F. App'x 562, 565 (5th Cir. 2010). "It is unlawful for an employer to fail to accommodate the known limitations of an employee's disability." *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011). To prove discrimination, Julian must "distinguish between an employer's knowledge of an employee's disability versus an employer's knowledge of any limitations experienced by the employee as a result of that disability." *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996). This distinction is important because employers must reasonably accommodate an employee's limitations, not disabilities. *Id.* "The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." *Id.*

To establish a claim for failure to accommodate, Julian must show that: "(1) [she] is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Credeur v. Louisiana Through Off. of Att'y Gen.*,

860 F.3d 785, 792 (5th Cir. 2017) (quoting *Neely v. PSEG Texas*, *Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013)).

"To avoid summary judgment on whether [she] is a qualified individual, [ a Plaintiff] needs to show 1) that [she] could perform the essential functions of the job in spite of [her] disability or 2) that a reasonable accommodation of [her] disability would have enabled [her] to perform the essential functions of the job." *Narayanan v. Midwestern State Univ.*, No. 7:21-cv-00046-O, 2022 WL 14318691, at *6 (N.D. Tex. Oct. 24, 2022) (quoting *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093 (5th Cir. 1996)); *see* 42 U.S.C. § 12111(8) (A "qualified individual" is someone who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."). Therefore, "[t]o be 'qualified' under the ADA, [Plaintiff] must be able to 'perform the essential functions' [of a NTFT clerk] 'with or without reasonable accommodation.'" *Credeur*, 860 F.3d at 792 (quoting 42 U.S.C. § 12111(8)). Julian testified that there were no duties that she could not perform because of her restriction and, thus, there is evidence to show that she is a qualified individual. ECF No. 34-5 at 28.

Next, Julian needed to present evidence that USPS knew of her limitations. In her deposition, Julian testified that she asked for an accommodation when she was postmaster at Scotland. ECF No. 34-5 at 28-29. However, when she was postmaster, she reported to neither Farney nor Winn. Thus, to the extent that she claims that Winn and Farney denied her an accommodation, Julian had to present evidence that Winn and Farney were aware of her limitation, but refused an accommodation. However, Julian's evidence on this point was her EEO complaint that states that she advised Winn of her medical condition in 2016 and that her restrictions were on file with the U. S. Department of Labor and in her Office Personnel file. ECF No. 46 at 2. She

did not offer evidence showing that she informed Winn and Farney of her workplace limitations. *See generally* ECF No. 41.

To the contrary, Donna Dunker, who was Manager of Human Resources for the Fort Worth District during the relevant time period, declared under penalty of perjury that that the U. S. Department of Labor closed Julian's bilateral foot strain claim in 2011 for lack of activity. ECF No. 32-1 at 1, 7. Moreover, a thorough and diligent review of the Fort Worth District Human Resources files did not show that Julian ever submitted a request for reasonable accommodation through District Human Resources or the District Reasonable Accommodations Committee. *Id.* Additionally, Winn testified that Julian did not express to him that she needed any form of reasonable accommodations or that she had any medical restrictions, physical limitations, work hour restrictions, or workplace limitations. ECF No. 32-2 at 11-12. Finally, Farney stated that Julian never provided supporting documentation to support her medical condition and did not ask Farney for any reasonable accommodations for any medical condition. ECF No. 34-3 at 36.

"[W]here the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, the initial burden rests primarily upon the employee . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations." *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996). A foot sprain is not an open and obvious disability. Accordingly, Julian was required to identify her limitations and suggest accommodations to her supervisors. *Id.* However, she provided no evidence to present an issue for trial that she communicated with her supervisors and notified them of her limitations. *See generally* ECF No. 41. Thus, Julian did not offer summary judgment evidence that would allow a reasonable finder of fact to conclude that USPS discriminated against her by failing to reasonably accommodate any limitations resulting from her alleged disability.

**D.      Julian has not shown a genuine issue of material fact regarding her hostile
         work environment claim.**

Julian's Amended Complaint generally alleges harassing activities that she contends
constituted a hostile work environment under the ADEA and the RA. *See* ECF No. 22 at 6-9. Julian
asserts that Farney required her to go through the chain of command when addressing work-related
issues; discussed her work performance and audited her time; instructed her to clean the office,
which was outside her job description; would not allow her to extend lunch by fifteen minutes to
go get change; and asked a co-worker to send a Facebook message to one of Julian's customers
asking about the service she received. ECF No. 46 at 8-9, 13-16, 24-26. Julian also alleges that
Winn questioned her integrity and accused her of wrongdoing when he asked whether she had
received a DWI/DUI citation. *Id*. at 17-18, 24-26.

**1.      Hostile work environment under the ADEA.**

A plaintiff asserting a hostile work environment under the ADEA must establish that "(1)
[she] was over the age of 40; (2) . . . was subjected to harassment, either through words or actions,
based on age; (3) the nature of the harassment was such that it created an objectively intimidating,
hostile, or offensive work environment; and (4) there exists some basis for liability on the part of
the employer." *Dediol v. Best Chevrolet, Inc*., 655 F.3d 435, 441 (5th Cir. 2011). DeJoy agrees
that Julian was over the age of forty. ECF No. 31 at 44. However, he argues that she cannot
establish the remaining elements of her harassment claim. *Id*.

As to her claim that supervisors discussed her work performance and audited her time (ECF
No. 46 at 13-14), the Court notes that Julian did not state in her EEO complaint that age was a
factor in the harassment. *Id*. at 13. Julian has provided no summary judgment evidence that she
was subjected to harassment through words or action based on age. In the Amended Complaint,
Julian asserts that the supervisors' desire for her to resign or retire because of her age motivated

the other incidents. *Id*. at 13-18, 24-16. Because she signed the EEO complaint under the penalty of perjury, the complaint raises a question of material fact regarding whether Julian was harassed because of her age.

"In order to satisfy the third element of a prima facie case of hostile work environment, a plaintiff must demonstrate that the harassment was objectively unreasonable." *Dediol*, 655 F.3d at 441. A workplace environment is hostile when it is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently pervasive to alter the conditions of the victim's employment." *Alaniz v. Zamora–Quezada*, 591 F.3d 761, 771 (5th Cir. 2009). The complained-of conduct must be both objectively and subjectively offensive. *E.E.O.C v. WC&M Enters*., 496 F.3d 393, 399 (5th Cir. 2007). Therefore, not only must the plaintiff perceive the environment to be hostile, but it must appear hostile or abusive to a reasonable person. *Id*. To determine whether conduct is objectively offensive, the Court considers the totality of the circumstances, including: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance." *Id*.

Requiring Julian to go through the chain of command when addressing work-related issues, instructing her beyond her job description to clean the office, and not allowing her to extend lunch by fifteen minutes to go get change are managerial decisions and do not rise to the "objectively unreasonable" level stated in *Dediol. Clark v. Champion Nat'l Sec*., *Inc*., 952 F.3d 570, 585 (5th Cir. 2020) (citing *Credeur*, 860 F.3d at 796 ("a disagreement with an employer over terms of employment or an accommodation do not amount to harassment")).

Although requesting an employee to send a Facebook message to a customer and asking Julian about a DWI/DUI citation were inappropriate, they do not present an issue for trial even if

they constituted harassment because there is no evidence that they interfered with Julian's job performance. *WC&M Enters*., 496 F.3d at 399. Julian has offered no evidence to show that she was not fully capable of performing her duties after these two incidents. *See generally* ECF No. 41; *Jackson v. Honeywell Int'l, Inc.*, 601 F. App'x 280, 287-88 (5th Cir. 2015). In fact, Julian continued to work in her then current role for four years until March 2022, when she retired from USPS on disability. ECF No. 32-1 at 17. Thus, she provided no evidence that the alleged harassment affected her work performance, and summary judgment is proper on her hostile work environment claim.

### 2.    Hostile work environment under the RA.

To succeed on a claim of disability-based harassment, Julian must prove:

> (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on her disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action.

*McConathy v. Dr. Pepper/Seven Up Corp*., 131 F.3d 558, 563 (5th Cir. 1998). The disability-based harassment must "be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment." *Id*. (quoting *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir. 1996)). In determining whether a work environment is abusive, the Court considers "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Shepherd v. Comptroller of Public Accounts*, 168 F.3d 871, 874 (5th Cir. 1999).

As stated above regarding Julian's disability discrimination claim, Julian produced no specific evidence showing that she was substantially limited in a major life activity. Accordingly,

she did not show that she belonged to the relevant protected group of persons with a disability. *See Espinoza v. Brennan,* No. EP-14-cv-290-DB, 2016 WL 7176663, at *10 (W.D. Tex. Dec. 7, 2016); *see also Ortega v. Chertoff*, 600 F. Supp. 2d 828, 839 (W.D. Tex. 2008); *c.f. McGarthy v. Ridge,* No. 3-02-cv-1111-P, 2004 WL 1542161, at *7 (N.D. Tex. July 7, 2004) (holding that plaintiff who had established that her physical impairment substantially limited the major life activities of caring for one's self and walking was considered part of a "protected group" at the summary judgment stage).

Moreover, Julian must also show that the actions complained of were based on her disability. *McConathy*, 131 F.3d at 563. None of Farney's actions mentioned above (requiring Julian to go through the chain of command, not extending lunch, and asking about a DWI/DUI charge) were based on any disability. In the EEO complaint, Julian was asked if she believed that her disability was a factor in the alleged violation, but in response Julian either did not address her disability or stated that her disability was not a factor. *Id.* at 9, 17, 23. Nowhere else did she offer evidence linking these actions with a disability. As a result, Julian did not produce evidence that she was subjected to harassment based on her disability as to these claims.

The claims linked to Farney's and Winn's discussion of Julian's work performance, auditing of her time, and instructing her to clean the office, were managerial decisions that do not amount to harassment. *Clark*, 952 F.3d 570, (citing *Credeur*, 860 F.3d at 796). As to the Facebook message incident, Julian has not provided any evidence to show that the message affected a term, condition, or privilege of her employment. She likewise offered no evidence to show that she was denied any conditions or privilege in its aftermath. *See generally* ECF No. 41. In fact, the evidence offered showed that the customer who was contacted praised Julian's service. ECF No. 47 at 10. Moreover, as stated above, Julian continued to work in her then current role until retirement

21

without any apparent effect of the Facebook message request. ECF Nos. 32-1 at 17, 41. Thus, Julian did not raise a fact issue for trial on any of her RA hostile work environment claims.

      **E.**      **Julian has not shown a genuine issue of material fact regarding her retaliation claim.**

To establish a prima facie case of retaliation under the ADEA or the RA, Julian must show: (1) that she engaged in activity protected by the ADEA or the RA; (2) that there was an adverse employment action; and (3) that there was a causal connection between her participation in the protected activity and the adverse employment decision. *Holt*, 89 F.3d at 1225-26; *Lanier v. Univ. of Texas Sw. Med. Ctr.*, 527 F. App'x 312, 319 (5th Cir. 2013). If she establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse action. *Stancu v. Hyatt Corp./Hyatt Regency Dallas*, 791 F. App'x 446, 450 (5th Cir. 2019) (citing *Wheat v. Fla. Par. Juv. Just. Comm'n*, 811 F.3d 702, 710 (5th Cir. 2016); *Reed v. McDonough*, No. 21-10380, 2021 WL 4452357, at *2 (5th Cir. 2021). Julian then bears the burden of showing that the employer's stated reason was a pretext for retaliation. *Id.* It is well established that the employee must show that "'but for' the protected activity, the adverse employment action would not have occurred." *Reed*, 2021 WL 4452357 at *3.

      **1.**      **Julian has not established a prima facie case of retaliation.**

Julian filed her first EEO complaint in August 2018. ECF No. 34-2 at 29. She amended the complaint in February 2019. 34-1 at 24. She asserts that in the period between her original complaint and the amendment, USPS retaliated against her for her ongoing EEO activity. ECF No. 41 at 4. Julian asserts that Farney retaliated against her for participating in USPS's EEO process by demanding that Julian agree to return the OOS pay on January 4, 2019, by processing an improper payroll deduction of $155 on January 8, 2019, and by improperly charging her with Leave without Pay ("LWOP") on February 22, 2019. ECF No. 46 at 26-34.

Julian engaged in a protected activity under the ADEA and the RA by filing an EEO complaint. *Pollak v. Lew*, 542 F. App'x 304, 306 (5th Cir. 2013); *Handy v. Brownlee*, 118 F. App'x 850, 855 (5th Cir. 2004). However, she did not offer sufficient summary judgment evidence to raise a fact issue to show the remaining requirements of a retaliation claim.

The improper payroll deduction of $155 was not an adverse employment action as USPS corrected the error and restored Julian's pay. ECF Nos. 34-2 at 32, 34-3 at 32; *Paul v. Elayn Hunt Corr. Ctr.*, 666 F. App'x 342, 347 (5th Cir. 2016) (holding that a docked paycheck that was later paid back based on a supervisor's mistake does not rise to the level of a "materially adverse" employment action). Likewise, the improperly charged LWOP was not a materially adverse employment action because Farney noticed that Julian had been improperly charged with LWOP, asked how Julian wanted to get paid for the mistake, and then ensured that Julian was paid an advance by a money order. ECF No. 34-3 at 41-42; *see Paul*, 666 F. App'x at 347.

For those same reasons, a letter requesting Julian to return the incorrectly paid overtime is not an adverse employment action. As stated above, an employment action that "does not affect job duties, compensation, or benefits" is not an adverse employment action. *Pegram*, 361 F.3d at 282. Julian has not shown that USPS denied her pay for hours she worked before or after the letter or that her job duties or benefits changed. *See generally* ECF No. 41. Additionally, USPS permitted Julian to keep the erroneous OOS pay after she reached a settlement with USPS under the Debt Collection Act. ECF 32-1 at 154. Thus, the repayment demand letter was not an adverse employment action. Absent any adverse employment actions, there is no causal relation between the protected activity and the alleged retaliatory actions.

### 2. Julian has not shown that DeJoy's legitimate, non-discriminatory reasons are a pretext for retaliation.

If Julian had established a prima facie case of retaliation, the burden would shift back to DeJoy to articulate a legitimate, non-discriminatory reason for the above actions. DeJoy repeatedly stated that Julian had to pay back OOS because there was a genuine disagreement regarding pay and timekeeping mistakes. ECF Nos. 32-1 at 13-14, 32-2 at 7. The $155 pay deduction was a pay adjustment mistake "from when everyone's checks were messed up" (ECF NO. 33-1 at 38), and the improperly charged LWOP was a system error that was promptly corrected (ECF No. 34-3 at 41-42). Thus, DeJoy met his burden of providing a legitimate, non-discriminatory reason for the actions taken, and Julian must show that those stated reasons were pretextual.

Julian provided scant evidence other that her subjective "belief" that her employer retaliated against for her filing an EEO complaint. ECF Nos. 41 at 4, 46 at 33. She did not point to evidence rebutting the fact that several people also had payroll deductions of $155 due to a system-wide error and did not show that her specific deduction was retaliation for filing the EEO complaint. *See generally* ECF No. 41. Similarly, she offered no evidence to prove that the improperly charged LWOP was intentionally retaliatory and not simply a mistake. *Id*.

Finally, Julian has not brought forward evidence to show that the demand letter asking for the OOS payments back was in retaliation for filing the EEO complaint. ECF No. 32-1 at 11. USPS made it clear even before Julian's initial EEO complaint that Julian was not entitled to keep the extra OOS payments. ECF No. 32-1 at 11. Julian has not pointed to any evidence to show that the letter was a pretext for discrimination because of her EEO complaint and not simply part of USPS's preexisting efforts to get back the incorrectly paid money. *See generally* ECF Nos. 41, 46-47. Thus, Julian has not established a fact question regarding USPS's legitimate, non-discriminatory

reasons for the actions it took, and Julian has not shown that there is a genuine issue for trial on her retaliation claim.

## IV.    CONCLUSION

Julian has not offered sufficient summary judgment evidence to show that there is a genuine issue of fact for trial on her numerous claims. After considering the pleadings, applicable legal authorities, and the summary judgment evidence, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** the Motion for Summary Judgment (ECF No. 30) and dismiss Julian's claims **with prejudice**.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on July 17, 2023.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE